922 So.2d 814 (2005)
W.E. DAVIS, Administrator of the Estate of Anthony Walker Smith, Deceased and Bank of Holly Springs, Appellants
v.
Raymond SMITH and Dorothy D. Smith, Intervenor, Appellees.
No. 2003-CA-02779-COA.
Court of Appeals of Mississippi.
August 16, 2005.
Rehearing Denied November 29, 2005.
Certiorari Denied March 2, 2006.
John Thomas Lamar, Senatobia, William F. Schneller, Holly Springs, attorneys for appellants.
John Barnett Turner, William Austin Baskin, William K. Duke, attorneys for appellees.
Before KING, C.J., MYERS and ISHEE, JJ.
*815 KING, C.J., for the Court.
¶ 1. Raymond Smith filed suit in the Chancery Court of Tate County against the Estate of Anthony Smith, his son, seeking reformation of a deed which conveyed an interest in a 657.4 acre farm in Tate County from himself to his son. Raymond Smith's wife, Dorothy Smith, also filed a motion to intervene wherein she claimed a homestead interest in the farm. The chancellor ruled in favor of both Raymond and Dorothy Smith. Aggrieved by the chancellor's ruling, the Estate of Anthony Smith raises the following issues which we quote verbatim:
1. Did the trial court err in finding that Raymond Smith proved beyond a reasonable doubt that a "mutual mistake" had occurred in that Raymond and Anthony had failed to advise the scrivener of the deed that a life estate was to have been reserved in Raymond's deed to Anthony?
2. Did the trial court err in placing almost conclusive weight upon a document which preceded execution of the deed and which, under Mississippi law should have been considered to have been merged into deed?
3. Did the trial court err in applying an erroneous "clear and convincing" standard of proof to the evidence?
4. Did the trial court err in finding that Dorothy (Mrs. Raymond) Smith should be awarded a "homestead" veto interest in 160 acres of the Tate county farm, sufficient to defeat the conveyance of the property in the deed from Raymond to her son, in spite of fact that she simultaneously claimed (under penalties of perjury) her residence in De[S]oto County as her homestead and signed the "farm agreement[,]" agreeing to convey the farm to Anthony?
5. Did the trial court err in failing to apply the doctrines of equitable estoppel and "clean hands" as to both the claims of Mr. Smith and the claim of Mrs. Smith?
6. Did the trial court err in denying Appellants' Motion to Compel Discovery, wherein they sought the income tax returns of Raymond Smith for the time periods in question in this suit, and which would have revealed substantial evidence of the true nature of the "business" activity at the Tate County property, the reasons for the "land swap" and omission of a "life estate" in the property as well as the fraudulent nature of the numerous "homestead" claims of the Raymond Smiths?
¶ 2. Finding no error, we affirm.

FACTS
¶ 3. In 2000, Raymond Smith and his son, Anthony Smith, now deceased, owned a farm in Tate County, which consisted of 657.4 acres. The farm was acquired over a period of years, with portions being owned by both Raymond and Anthony, and other portions being owned exclusively by Raymond.
¶ 4. Anthony Smith owned commercial property in Shelby County, Tennessee. In 1999, Anthony executed a contract to sell the Shelby County property for $450,000 to Albert Tallon. The contract required the buyer to pay the seller $75,000 at closing and give a note for $375,000 payable over ten years and bearing ten percent interest.
¶ 5. According to Raymond Smith, Anthony was interested in a "land swap," whereby Raymond would swap the Tate County farm property for the Shelby County property. Raymond indicated that *816 in January 2000, a family meeting[1] was held at Anthony's office to discuss the transaction. Raymond stated that Martha Hughes, Anthony's bookkeeper, prepared an agreement which contained the terms of the agreement.
¶ 6. Martha Hughes stated that the original "Farm Agreement" could not be located, but that she found a copy of the agreement at some time (approximately four months prior to trial) after Anthony's death and faxed the agreement to Dorothy Smith's attorney, William Duke. The agreement stated:
FARM AGREEMENT
1/28/2000
THIS AGREEMENT IS FOR RAYMOND AND TONY TO DO LAND SWAP ON FARM AND SHELBY DRIVE PROPERTY.
TONY'S PART IN AGREEMENT AS FOLLOWS:
TONY WILL DEED THE PROPERTY AT 3090 SHELBY DRIVE TO RAYMOND SMITH, VALUED AT APPROXIMATELY $450,000.00. TONY WILL ALSO GIVE UP ALL RIGHTS TO ANY AND ALL INHERITANCE DUE TO HIM AT THE TIME OF RAYMOND AND DOROTHY'S DEATH.
RAYMOND'S PART IN AGREEMENT AS FOLLOWS:
RAYMOND WILL DEED THE ENTIRE FARM OVER TO TONY WITH THE UNDERSTANDING THAT ALL THE DAY TO DAY OPERATIONS REMAIN IN RAYMONDS CONTROL AND THAT HE CONTINUE TO LIVE ON THE FARM UNTIL HIS DEATH. ANY NEW CONSTRUCTION IS TO BE PRORATED FOR 12 YEARS FROM DAY OF LAND SWAP. IF RAYMOND DIES WITHIN THE 12 YEARS, THE REMAINING YEARS ARE TO BE PRORATED AND GIVEN TO DOROTHY.
TONY AND RAYMOND BOTH AGREE TO SEE TERESA HURST TAX ATTORNEY ON THE LEGAL APPROACH TO TAXES.
JAN MASSEY AND SALLY PAYTON AGREE TO THE LAND SWAP AND UNDERSTAND THAT THEY WILL HAVE NO CLAIM ON THE FARM IN TATE COUNTY AND TONY WILL RECEIVE NOTHING FROM ANY OTHER PROPERTIES OR ASSETS AT THE TIME OF RAYMOND AND DOROTHY'S DEATH
TONY HAS A BUYER FOR SHELBY DRIVE PROPERTY AND RAYMOND AGREES TO SELL THE PROPERTY AND OWNER FINANCE THE LOAN. TONY AND RAYMOND WILL DO A BACK TO BACK CLOSING SO TONY WILL HAVE FUNDS TO PAYOFF LEIN [SIC] FROM DOWN PAYMENT FROM BUYER.
The agreement was signed by Raymond Smith (father), Tony Smith (Anthony-son), Dorothy Smith (mother), Jan Massey (daughter), and Sally Peyton (daughter).
¶ 7. Attorney Hugh Armistead was contacted by Anthony Smith to prepare the necessary documents for the transaction. Armistead stated that Raymond and Anthony wanted some tax advice regarding the transaction and Armistead advised both parties to consult a tax attorney regarding IRS regulations and the consequences of the transaction. The parties *817 agreed to consult Teresa Hurst, tax attorney.
¶ 8. After consulting a tax attorney, in 1999, Anthony advised Armistead to prepare an exchange warranty deed for the land swap transaction. Armistead also stated that the reservation of a life estate for Raymond was never discussed with him by either Raymond or Anthony. According to Armistead, Anthony stated:
He told me he wanted to make sure that he got all the property on there. He had gone through all his stuff and this was it. I said, Tony, don't you think I need to go down there and look at it? He said, no, I know this is it. I said, okay. He said, I want to make sure we get everything deed [sic] in my name. I don't want to have to take the chance to buy my sisters out later if something happens to my daddy, and that's what he told me.
Q. He was concerned about his sisters maybe making some kind 
A. It wasn't anything that he wanted to cheat his sisters or anything they weren't entitled to, but he said, I don't want to have to buy the place twice is what he was telling me.
Q. Okay. Did he mention anything about a life estate?
A. No, sir.
¶ 9. On February 29, 2000, Raymond and Anthony Smith met with Armistead. After Raymond read the deed, both parties signed the documents. Upon exchanging deeds, Raymond continued to live on and use the farm property. He also made improvements to the property.
¶ 10. On March 20, 2000, Dorothy Smith filed a homestead application in DeSoto County.
¶ 11. On October 29, 2001, Anthony was killed in a plane crash in Tate County. At the time of his death, Anthony was nearing the conclusion of divorce proceedings with his wife, Vickie Smith. Vickie requested that the divorce proceedings be halted, which was granted.
¶ 12. On April 12, 2002, Raymond filed suit for reformation of deed alleging that due to a scrivener's error, the property conveyed by Raymond to his son failed to reserve a life estate for him as orally agreed upon between Raymond and his son.
¶ 13. On May 8, 2003, Dorothy Smith filed a motion to intervene to have her interest in the farm declared as her homestead.
¶ 14. On September 3 and 4, 2003, the matter went to trial. The chancellor determined that Raymond Smith demonstrated beyond a reasonable doubt that a mutual mistake existed between Raymond and his son in the consummation of the land swap, and that Raymond would have a life estate reserved in the Tate County farm property. The chancellor also ruled that Dorothy was vested with homestead rights in the property located in Tate County.
¶ 15. This Court finds issues I. and IV. to be dispositive of this matter and will therefore address only them.

ISSUES AND ANALYSIS

I.
Did the trial court err in finding that Raymond Smith proved beyond a reasonable doubt that a "mutual mistake" had occurred in that Raymond and Anthony had failed to advise the scrivener of the deed that a life estate was to have been reserved in Raymond's deed to Anthony?
¶ 16. The supreme court has stated that "[t]he law in Mississippi is clear that, to prove a mistake in a warranty deed, the *818 party alleging the mistake, and seeking to reform the deed because of it, must prove the mistake beyond a reasonable doubt." Dunn v. Dunn, 786 So.2d 1045(¶ 14) (Miss. 2001). The supreme court also stated that "the chancellor's findings will be upheld unless those findings are clearly erroneous or an erroneous legal standard was applied." Id. at (¶ 12).
¶ 17. The Estate of Anthony Smith contends that Raymond Smith's claim that there was a scrivener's error because the deed regarding the land swap failed to indicate that a life estate should be reserved for Raymond must fail.
¶ 18. Raymond testified that Anthony approached him about doing a "land swap" to which he indicated that he would consider it if he could have a "lifetime stay" and if the rest of the family would agree to it. Raymond indicated that at the family meeting in January 2000, the other family members agreed to the arrangement and signed the agreement.
¶ 19. Glen Mitchell, a friend and business associate of Anthony Smith, testified that at some time in 2000, he was riding with the decedent and they discussed the land swap. According to Mitchell, Anthony told him that Raymond could live on the farm property as long as he lived.
¶ 20. Robert Cook, a banker who purchased equipment with the decedent, testified that Anthony told him about the intent to do a land swap with Anthony's father for the father's half interest in the farm. Cook stated that Anthony told him that he and his father were going to have an agreement drawn up so that his father could "keep his cows and farm as long as he wants to or until he dies."
¶ 21. Michael Massey also testified in Raymond's behalf. Massey, an individual who went to auctions with the decedent, stated that Anthony told him that he was going to do a land swap with his father, Raymond and that Raymond could have, "his terms were lifetime estate, lifetime use of the Tate County property." Massey testified that the following had occurred around March 2000:
Q. Did he (Anthony) make any statements at that time about Mr. Raymond Smith's rights on the farm?
A. Right. At that time he said he had a lifetime estate there with that farm and lifetime use of the Tate County farm, and that they had had, you know, met and got it all worked out by the end and had consummated the deal.
¶ 22. Bradley Smith, Anthony's son by his first marriage (age twenty-three), testified that Anthony told him that Raymond had given him (Anthony) an early inheritance by doing a land swap and that Raymond "had a lifetime stay on the farm as long as he wanted to use it."
¶ 23. The agreement to exchange properties states, "Raymond will deed the entire farm over to Tony with the understanding that all the day to day operations remain in Raymonds control and that he continue to live on the farm until his death." This language indicates an intent to provide Raymond with a life estate. That reading is consistent with the testimony of the various witnesses as to their conversations with Anthony.
¶ 24. However, Hugh Armistead, the attorney who prepared the deed for Raymond and Anthony, testified that he watched Raymond and Anthony read the deed and neither one asked him any questions regarding the transaction. Armistead also stated that neither Raymond nor Anthony discussed the inclusion of a life estate in the deed with him. There is some speculation that the failure to mention a life estate to Armistead was related to the issue of the possible income tax *819 consequences of this transaction. However, there is no proof offered to substantiate this speculation.
¶ 25. A chancellor sits as the trier of fact, and his findings, where supported by substantial evidence, must be deferred to by this Court. Hammers v. Hammers, 890 So.2d 944(¶ 29) (Miss.Ct.App.2004). The written exchange agreement, the conduct of the parties, and the testimony of the various witnesses as to Anthony's statements that his father was to control and live on the farm for the balance of his life, are substantial evidence, which supports the chancellor's findings.
¶ 26. There has been some concern expressed that the chancellor relied heavily on the farm agreement in making his decision to grant the reservation of the life estate to Raymond. As the finder of fact, the chancellor also judges the weight and credibility to be accorded the evidence. Where the evidence is rationally subject to more than one interpretation, this Court will not reverse the chancellor's decision simply because we might have otherwise decided the issue. Bower v. Bower, 758 So.2d 405 (¶¶ 31-33) (Miss. 2000). Because we determine that there exists in the record substantial evidence which supports the chancellor's findings we affirm on this issue. The reformation of the deed is supported by substantial, credible evidence.

IV.

Whether the chancellor erred in awarding Dorothy Smith a homestead interest in the Tate County farm.
¶ 27. The Estate contends that the chancellor erred in awarding Dorothy Smith a homestead interest in the Tate County farm because she filed an application for homestead exemption in DeSoto County in March 2000 where she declared that as of January 2000, the DeSoto County property was she and her husband's primary home.
¶ 28. Dorothy Smith claims that the Tate County farm was her homestead because she resided on it at the time of the signing of the exchange deed. In Mississippi, to claim homestead exemption, one must be "a Mississippi resident and a householder who occupied the land and house in question as a residence." In re Franzke, 634 So.2d 117, 120 (Miss.1994). Statutes granting homestead exemption are entitled to be liberally construed. Daily v. City of Gulfport, 212 Miss. 361, 367, 54 So.2d 485, 487 (1951).
¶ 29. Dorothy Smith argues that because she did not sign the exchange deed, it is void pursuant to Mississippi Code Annotated Section 89-1-29 (Rev.1999). This statute states in part that "[a] conveyance, mortgage, deed of trust or other incumbrance upon a homestead exempted from execution shall not be valid or binding unless signed by the spouse of the owner if the owner be married and living with the spouse." Dorothy Smith did not sign the deed to transfer title to the farm, and therefore the deed could not impact any homestead interest held by her in the farm.
¶ 30. Dorothy Smith's homestead was to be determined as of the date of execution of the deed, February 29, 2000. The chancellor determined that Raymond and Dorothy Smith owned property in Tate and DeSoto Counties, and were registered to vote in Tate County. The parties paid taxes on the Tate County property prior to the land swap, and had claimed the property as homestead for tax exemption purposes since 1994. After the land swap, Dorothy Smith filed a homestead application in DeSoto County in March 2000. The chancellor declared the exchange deed void as to Dorothy's homestead interest *820 consisting of 160 acres of the property pursuant to Ward v. Ward, 517 So.2d 571, 572 (Miss.1987). In Ward, the supreme court held that Section 89-1-29 "mandates that any conveyance of that homestead without the joinder of both spouses is invalid. We have consistently held that such a conveyance is null and void `as to both the husband and wife.'" Id.
¶ 31. This Court finds that the chancellor's award of the homestead interest to Dorothy was supported by substantial evidence. When the deed was executed on February 29, 2000, Dorothy and Raymond still lived on the Tate County farm and voted in Tate County. The record does not indicate that on the date the deed was executed, either Dorothy or Raymond had claimed homestead any place other than Tate County. Indeed, it was only after execution of the deed that Dorothy declared herself to be a DeSoto County resident.
¶ 32. There is no merit to this issue.
¶ 33. THE JUDGMENT OF THE CHANCERY COURT OF TATE COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
BRIDGES AND LEE, P.JJ., MYERS, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR. IRVING, J., NOT PARTICIPATING.
NOTES
[1] According to the transcript, the persons who attended the family meeting were: Dorothy Smith, Raymond Smith, Anthony Smith, Sharon Jan Massey, Sally Peyton, and Martha Hughes.