IN THE SUPREME COURT OF MISSISSIPPI

NO. 2009-CA-01838-SCT

*IN THE MATTER OF THE ESTATE OF
ANTHONY WALTER SMITH, DECEASED: W. E.
DAVIS, ADMINISTRATOR*

*v.*

*RAYMOND SMITH*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/29/2009 |
| TRIAL JUDGE: | HON. PERCY L. LYNCHARD, JR. |
| COURT FROM WHICH APPEALED: | DESOTO COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | JOHN THOMAS LAMAR, III |
| | JOHN THOMAS LAMAR, JR. |
| ATTORNEYS FOR APPELLEE: | JOHN BARNETT TURNER, JR. |
| | BILLY C. CAMPBELL, JR. |
| NATURE OF THE CASE: | CIVIL - WILLS, TRUSTS, AND ESTATES |
| DISPOSITION: | AFFIRMED - 06/16/2011 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WALLER, C.J., RANDOLPH AND CHANDLER, JJ.**

**CHANDLER, JUSTICE, FOR THE COURT:**

¶1.     This case has been before an appellate court three times. In ***In re Estate of Smith***, 891

So. 2d 811 (Miss. 2005), this Court issued an opinion holding that tax liability should be

based on the taxable estate rather than the gross estate, and remanded the case to the chancery

court to determine the amount of tax liability each party owed. Then, in ***Davis v. Smith***, 922

So. 2d 814 (Miss. Ct. App. 2005), the Mississippi Court of Appeals determined that

Raymond Smith (Raymond) held a life estate in the Tate County Farm on which he resided.

¶2.    After this Court remanded the case, Anthony Walker Smith's estate ("the Estate") filed two motions demanding that Raymond and Ruth Smith ("Ruth") reimburse the Estate for taxes paid, plus interest. Raymond filed a motion demanding that the Estate pay him rent for the time he was excluded from the farm in which he held a life-estate interest. After a hearing on February 6, 2009, addressing all motions, the chancellor issued an order, which held that Raymond and Ruth were responsible for their portions of tax liability owed to the Estate and any interest accrued after the judgment, but were not responsible to pay the Estate any interest accrued prior to the chancellor's judgment. The chancellor further held that Raymond was entitled to twenty-four months of rent for the time he was excluded from the farm. The Estate then appealed to this Court.

**FACTS**

¶3.    Anthony Walker Smith ("Tony") died October 29, 2001, in a plane crash in Tate County. W.E. Davis was named as administrator. The assets of Tony's estate, considered for taxable purposes, included two separate life insurance policies. Tony's father, Raymond, was named as the sole beneficiary of a $2 million policy while Tony's ex-wife, Ruth, was named as the sole beneficiary of a $125,000 policy.

¶4.    At the time of Tony's death, Raymond owned a life estate in Tate County, consisting of approximately 657.4 acres. Dorothy owned a homestead interest in 160 acres of this property. *See **Davis**, 922 So. 2d at 819.

I. The Estate's tax liability

¶5.    Following the Estate's tax payment on July 29, 2002, and a request by the Estate for Raymond and Ruth to cover all of the tax payment, Raymond filed a declaratory judgment

2

action in the Chancery Court of DeSoto County to determine whether the administrator, Davis, could shift the tax burden of the Estate to Raymond and Ruth. The chancery court held that, once the assets of the estate were clearly determined, Raymond and Ruth should pay a percentage of the tax liability proportionate to their share of the gross estate. This Court reversed and remanded on January 20, 2005, holding that, under the applicable statutes, the estate should pay tax liability proportionate to its share of the taxable estate rather than the gross estate. *Estate of Smith*, 891 So. 2d at 813.

¶6.     This Court instructed the chancery court to determine the amount of the taxable estate on remand. *See Estate of Smith*, 891 So. 2d at 813. Davis originally had included the farm as part of the estate, but after the reformation of the deed, the Estate held only a remainder interest in 493.7[1] acres of that property. To determine the value of the remainder interest, the Estate and Raymond each hired appraisers. The Estate's appraiser found the remainder interest to be worth $340,000, while Raymond's appraiser valued the remainder interest at $245,000. In its March 10, 2009, opinion, the chancery court held that Raymond's appraisal was based on a more in-depth and accurate evaluation than the Estate's appraisal, and determined that, for tax purposes, the remainder interest was valued at $245,000.

II. The Estate's exclusion of Raymond Smith from the 493.7-acre property

¶7.     At the February 6, 2009, hearing, Raymond testified that, from October 30, 2001, until May 22, 2006, he was excluded from a hangar and an equipment shed located on the 493.7-

---

[1] An approximate estimate of the acreage Tony owned at his death is 657.4 acres. It is undisputed that 160 acres were deducted for Raymond's and Dorothy's homestead, and both experts appraised the remainder interest as 493.7 acres. Therefore, the remaining 3.7 acres are the result of the first, approximate estimate of 657.4 acres.

acre property in which he held a life-estate interest. The buildings were padlocked, and Davis was the only person with keys to the locked buildings. Raymond did not gain access to the hangar and the equipment shed until he hired a locksmith to open the locks on May 22, 2006. Davis also testified that Raymond had no access to the buildings.

¶8. Roger Brown, a licensed appraiser and real estate broker, estimated that the two buildings would rent for fifty cents per square foot. That appraisal is undisputed by the Estate. The chancellor held that, before the order for reformation of the deed on September 15, 2003, the administrator had the right to exclude anyone, including Raymond, from the entire estate.

¶9. After September 15, 2003, Raymond was within his legal rights to occupy the buildings, but Davis continued to keep the buildings locked, forcing Raymond ultimately to employ a locksmith to gain access. Because he was excluded from the buildings after reformation of the deed, the chancellor held Raymond was entitled to twenty-four months of rent, which would be applied as a credit against any tax liability owed to the estate.

## STANDARD OF REVIEW

¶10. A chancery court's interpretation and application of the law are reviewed de novo. *In re Guardianship of Duckett*, 991 So. 2d 1165, 1173 (Miss. 2008) (citing *Weissinger v. Simpson*, 861 So. 2d 984, 987 (Miss. 2003)). The chancellor's findings of fact will not be reversed if supported by substantial evidence. *Duckett*, 991 So. 2d at 1173 (citing *UHS-Qualicare, Inc. v. Gulf Coast Cmty. Hosp., Inc.*, 525 So. 2d 746, 753 (Miss. 1987)). However, an award of prejudgment interest is reviewed for abuse of discretion. *Duckett*, 991

4

So. 2d at 1173 (citing ***Aetna Cas. & Sur. Co. v. Doleac Elec. Co.***, 471 So. 2d 325, 331 (Miss. 1985)).

## DISCUSSION

### I. WHETHER THE CHANCELLOR ERRED BY NOT AWARDING PREJUDGMENT INTEREST.

¶11.    An honest dispute existed over how to apportion tax liability, and the amount originally demanded by the Estate was excessive and ultimately proven to be wrong. Because of the dispute and confusion concerning the proper amount of tax liability, the chancellor refused to award prejudgment interest to the Estate.  The chancellor acted within his discretion and made the correct ruling.

¶12.    The correct standard for awarding prejudgment interest is set forth in ***Moeller v. American Guarantee and Liability Insurance Co.***, 812 So. 2d 953 (Miss. 2002). Prejudgment interest may be allowed in cases in which the amount due is liquidated when the claim is originally made or when the denial of a claim is frivolous or in bad faith. ***Id.*** at 958.

¶13.    Liquidated damages are set or determined by contract, while unliquidated damages cannot be determined by a fixed formula, and are instead established through verdict or award. ***Capital One Services, Inc. v. Rawls***, 904 So. 2d 1010, 1018 (Miss. 2004) (citing ***Moeller***, 812 So. 2d at 959-60).  "As to whether a claim is liquidated, interest has been denied where 'there is a bona fide dispute as to the amount of damages as well as the responsibility for the liability therefor.'" ***Moeller***, 812 So. 2d at 960 (citing ***Simpson v. State***

***Farm Fire & Cas. Co.***, 564 So. 2d 1374, 1380 (Miss. 1990) (quoting ***Grace v. Lititz Mut.***
***Ins. Co.***, 257 So. 2d 217, 225 (Miss. 1972)).

¶14.   It has been well established that disputed damages are unliquidated, and thus no prejudgment interest is warranted.  "No award of pre-judgment interest may rationally be made where the principal amount has not been fixed prior to judgment."  ***Warwick v.***
***Matheney***, 603 So. 2d 330, 342 (Miss. 1992) (citing ***Stanton & Assoc., Inc. v. Bryant***
***Constr. Co.***, 464 So. 2d 499, 504 (Miss. 1985)).  "There was a bona fide dispute as to whether Gillis was entitled to a quantum meruit award, and if so, the amount.  As such the claim was not liquidated . . . thus an award of pre-judgment interest was not warranted."  ***In***
***re Estate of Gillies***, 830 So. 2d 640, 647 (Miss. 2002).  "That they were entitled to interest on their claim, we hold that there is no merit therein because in this instance there is a bona fide dispute as to the amount of damages as well as the responsibility for the liability therefore."  ***Grace***, 257 So. 2d at 225.

¶15.   In his May 13, 2003, order, the chancellor stated, "the assets of the Estate are not solidly determined at this time and it would therefore be premature at this point for the Court to attempt to apportion exact figures of tax liability."  However, the chancellor determined tax liability should be figured by assessing the proportionate value each beneficiary held in the gross estate.  This Court then reversed the decision of the chancellor to apportion tax liability based on the amount of the taxable estate each held.

¶16.   Pursuant to its ruling as to the proper method by which to calculate the respective parties' tax liability, this Court remanded the case to the chancery court to make the final determination of money owed by each party.  On remand, both parties submitted expert

opinions to support their valuation of the 493.7 acres. After a hearing on February 6, 2009, the chancellor held:

> In the case at bar the amount of liability of the respondent is at the very core of this litigation. The respondent has no way of knowing the amount of his liability until such time as the value of the estate, particularly his life estate interest as to the real estate in question, has been determined. Accordingly, the court finds that the amount herein due is in question and accordingly is not liquidated. Consequently, this court is powerless to award prejudgment interest.

¶17. The order of the chancery court setting forth the amount due stated, "Raymond Smith shall be liable for interest in the amount of eight percent per annum on his share of the taxes due by the estate beginning on the 20th day of March, 2009." The damages were "in dispute," and thus unliquidated until the final judgment and order by the chancellor. Therefore, prejudgment interest was not warranted.

¶18. If the damages are unliquidated, prejudgment interest may still be warranted if there is evidence of bad faith. This Court set forth the definition of bad faith in *Bailey v. Bailey*. Bad faith is defined as follows:

> The opposite of "good faith," generally implying or involving actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive. Term "bad faith" is not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity; it is different from the negative idea of negligence in that it contemplates a state of mind affirmatively operating with furtive design or ill will.

*Bailey v. Bailey*, 724 So. 2d 335, 338 (Miss. 1998) (citing *Black's Law Dictionary* 139 (6th ed. 1990)). The Estate asserts that Raymond and Ruth willfully, wrongfully, and repeatedly "withheld money rightfully belonging to the Estate for over seven years." The Estate asserts

7

that Raymond and Ruth initiated "lengthy litigation," and "specifically and deliberately chose not to reimburse the Estate." But, as stated in **Bailey**, bad faith implies a dishonest purpose or moral obliquity. Raymond and Ruth were not acting in bad faith, as there was a legitimate disagreement among the parties regarding each one's tax liability. The Estate overestimated the amount due by Raymond and Ruth. Because an honest dispute existed as to the amount owed, litigation was warranted.

¶19. Prejudgment interest also may be awarded when the denial of the claim was frivolous. This Court has defined the term "frivolous" in the context of frivolous claims under Mississippi Rule of Civil Procedure 11. A frivolous claim is one that, objectively considered, has no hope of success. **Stevens v. Lake**, 615 So. 2d 1177, 1184 (Miss. 1993). This Court has defined "frivolous plea" as:

> "one so clearly untenable, or the insufficiency of which is so manifest upon a bare inspection of the pleadings, that the court or judge is able to determine its character without argument or research"; and, also, "an answer can be said to be frivolous only when it is so clearly bad as to require no argument to show its character, and which would be said to be so manifestly defective as to be indicative of bad faith upon a mere inspection."

**Sherrill v. Stewart**, 197 Miss. 880, 898, 21 So. 2d 11, 17 (1945) (quoting **Germain v. Harwell**, 108 Miss. 396, 66 So. 396, 398 (1914)). Raymond's denial of the Estate's claim is analogous to a defensive pleading, which is not frivolous unless "conceding it to be true it does not, taken as a whole, contain any defense to any part of complainant's cause of action and its insufficiency as a defense is so glaring that the Court can determine it upon a bare inspection without argument." **Id.** "If argument is necessary to convince the Court of the

8

bad faith of the pleader or the insufficiency of the plea it can not be held to be frivolous."

*Id.*

¶20. We find that Raymond's denial of the claim was not frivolous. As previously discussed, both sides made legitimate arguments concerning the correct amount of tax liability, and the Estate's original demand was excessive and ultimately proven to be incorrect. The Estate's original demand was more than $500,000, which this Court found to be erroneous, because that calculation constituted the entire tax liability of the estate and rested on the amount of the gross estate, rather than the taxable estate. *See **Estate of Smith***, 891 So. 2d at 811-13. On remand for the determination of the amount of the taxable estate and apportionment of tax liability, the chancellor was presented with competing property valuations from the Estate and Raymond. The chancellor made a discretionary decision to accept the valuation posited by Raymond. But even if the chancellor had accepted the Estate's valuation, the $324,569 tax liability calculated by the Estate was significantly lower than the Estate's original demand from Raymond of more than $500,000. Given the legitimate legal arguments concerning the amount of the tax liability, Raymond's refusal to pay the Estate's demand cannot be considered frivolous. Because (1) the damages were unliquidated, (2) no bad faith can be shown, and (3) Raymond's denial of the claim was not frivolous, the chancellor was correct in not awarding prejudgment interest to the Estate.

**II. WHETHER THE CHANCELLOR ERRED BY FINDING THAT RAYMOND WAS IMPROPERLY EXCLUDED FROM A PORTION OF THE TATE COUNTY FARM FOR A PERIOD OF TWENTY-FOUR MONTHS AND THEREFORE ENTITLED TO BACK RENT.**

9

¶21.    From October 30, 2001, until May 22, 2006, Davis locked Raymond out of two

buildings located on the farm in which Raymond held a life estate.  The Estate argues that

the administrator's duty is to act "in good faith and employ such vigilance, sagacity,

diligence, and prudence" when controlling assets. *Harper v. Harper*, 491 So. 2d 189, 193-94

(Miss. 1986).  While this is true, the Estate's right solely to control the farm was extinguished

on September 15, 2003, when the chancellor determined that Raymond held a life estate in

the property.  After September 15, 2003, Raymond had every right to enter and use the

property, but Davis continued to keep the buildings locked, and Raymond was unable to

access *his* property until he acquired the assistance of a locksmith on May 22, 2006.

¶22.    "Quantum meruit recovery is a contract remedy which may be premised either on

express or implied contract, and a prerequisite to establishing grounds for quantum meruit

recovery is claimant's reasonable expectation of compensation." *In re Estate of Fitzner*, 881

So. 2d 164, 173 (Miss. 2003) (citing *Estate of Johnson v. Adkins*, 513 So. 2d 922, 926

(Miss. 1987); *Estate of Van Ryan v. McMurtray*, 505 So. 2d 1015, 1018 (Miss. 1987); *Wiltz

v. Huff*, 264 So. 2d 808, 810-11 (Miss. 1972)).  The doctrine of quantum meruit

> applies to situations where there is no legal contract but where the person
> sought to be charged is in possession of money or property which in good
> conscience and justice he should not retain but should deliver to another, the
> courts imposing a duty to refund the money or the use value of the property to
> the person to whom in good conscience it ought to belong.

*Fitzner*, 881 So. 2d at 174 (citing *Hans v. Hans*, 482 So. 2d 1117, 1122 (Miss. 1986)).

¶23.    The facts here duplicate the scenario contemplated in *Fitzner*.  The administrator's

obligation to protect the buildings and assets of the farm expired when it was determined that

Raymond had a life estate in the property. The administrator then had a *new* obligation to relinquish the property to Raymond.

¶24. The Estate alternatively argues that awarding twenty-four months of rent is incorrect, because the time period between the judgment and Raymond's access to the property was only nineteen and a half months. This assertion is incorrect, as September 15, 2003 (the date of the judgment finding Raymond had a life estate) to May 22, 2006 (the day Raymond accessed the property with a locksmith) is clearly *more* than twenty-four months. Raymond was improperly excluded from his property, and the chancellor acted within his discretion in awarding twenty-four months of the property's rental value.

## CONCLUSION

¶25. Because the Estate's assignments of error are without merit, we affirm. Prejudgment interest is not warranted because (1) the damages were not liquidated, (2) no bad faith can be shown, and (3) Raymond's denial of the Estate's demand was not frivolous. Twenty-four months of back rent is due Raymond, because he was improperly excluded from property in which he held a life estate.

¶26. **AFFIRMED.**

**WALLER, C.J., CARLSON AND DICKINSON, P.JJ., RANDOLPH, KITCHENS, PIERCE AND KING, JJ., CONCUR. LAMAR, J., NOT PARTICIPATING.**

11