898 So.2d 680 (2005)
CAPITAL CITY INSURANCE CO., INC., Appellant
v.
RINGGOLD TIMBER COMPANY, INC., Appellee.
No. 2001-CA-01354-COA.
Court of Appeals of Mississippi.
October 5, 2004.
Rehearing Denied February 1, 2005.
Certiorari Denied April 7, 2005.
Jeffrey Stephen Moffett, H. Wesley Williams, Jackson, attorneys for appellant.
*681 O. Marvin Oates, Bay Springs, Robert C. Boyd, Clinton, James Randal Wallace, attorneys for appellee.
EN BANC.
LEE, P.J., for the Court.

PROCEDURAL HISTORY AND FACTS
¶ 1. In May 1996, Billy and Barbara Jo Walker authorized Ringgold Timber Company, Inc. to cut trees located on their property. However, the land in question was actually owned by John Boutwell. Upon learning that Ringgold had commenced cutting trees on his land, Boutwell advised Ringgold that the particular property did not belong to the Walkers and therefore Ringgold should cease from operations. At the time of the incident, Ringgold was insured by Capital City Insurance Company, Inc. Included in their policy was a clause providing "fire damage and overcutting of timber liability coverage" with a limit of liability of $25,000 for each occurrence.
¶ 2. On November 15, 1996, Boutwell filed a complaint against the Walkers and "John Doe" Timber Company for the loss of his trees. Although Boutwell's complaint was not amended until August 12, 1998, to name Ringgold as the timber company involved, there was evidence that Ringgold became aware that they were the "John Doe" identified in the lawsuit as early as one month after the original complaint was filed. Ringgold filed a claim with Capital City on January 22, 1999, which Capital City denied on January 26, 1999. In denying coverage to Ringgold, Capital City stated that failure to provide notice of the claim violated the terms of Ringgold's policy.
¶ 3. Following Capital City's denial of coverage, Boutwell filed a direct action for declaratory judgment against Capital City pursuant to Mississippi Rules of Civil Procedure 57(b). The chancellor was asked to determine the issue of insurance coverage as well as the underlying claim for the timber overcut. On August 8, 2001, the chancellor found the Walkers, Ringgold, and Capital City jointly and severally liable to the Boutwells in the amount of $48,699.50. Capital City eventually paid the full amount of the judgment. Aggrieved, Capital City now appeals to this Court asserting the following issues: (1) the chancellor erred in finding that the notice requirement in Capital City's insurance policy with Ringgold was not a condition precedent to coverage; (2) the chancellor erred in holding that Capital City had not suffered prejudice from Ringgold's delay in providing notice of the incident; and (3) the chancellor erred in finding Capital City jointly and severally liable where no party had alleged Capital City committed a tort. Although we find no error in the first two issues, we do find that the chancellor abused his discretion in regards to the third issue; thus, we affirm in part and reverse and render in part.

DISCUSSION OF ISSUES

I. DID THE CHANCELLOR ERR IN FINDING THAT THE NOTICE REQUIREMENT IN CAPITAL CITY'S INSURANCE POLICY WITH RINGGOLD WAS NOT A CONDITION PRECEDENT TO COVERAGE?
¶ 4. In its first issue, Capital City claims that the chancellor erred in finding that the notice requirement in the insurance policy with Ringgold was not a condition precedent to coverage. Capital City argues that the notice provision was a condition precedent to coverage and, therefore, coverage was properly denied. The supreme court has stated that questions concerning the construction and interpretation *682 of contracts are questions of law; thus, our standard of review is de novo. Warwick v. Gautier Utility Dist., 738 So.2d 212(¶ 8) (Miss.1999).
¶ 5. In looking at the contract, Section I states that Capital City "will pay those sums that the insured becomes legally obligated to pay as damages because of `bodily damage' or `property damage' to which this insurance applies." The notice provision that Capital City alludes to in its refusal to pay is contained within Section IV. Section IV(2)(a) states that Ringgold "must see to it that we are notified as soon as practicable of an `occurrence' or an offense which may result in a claim." Section IV(2)(b) states that, "If a claim is made or suit is brought against any insured, you must: (1) [i]mmediately record the specifics of the claim or `suit' and the date received; and (2) [n]otify us as soon as practicable. You must see to it that we receive written notification of the claim or `suit' as soon as practicable." The contract further states, under Section IV(3), that "[n]o person or organization has a right under this Coverage Part ... (b) [t]o sue us on this Coverage Part unless all of its terms have been fully complied with."
¶ 6. According to the supreme court in Commercial Union Ins. Co. v. Dairyland Ins. Co., 584 So.2d 405 (Miss.1991), insurers who wish to make notice a condition precedent must do so clearly. The court wrote that "[the insurer] could have specifically stated that failure to give notice will render any obligations under this policy void." Id. at 408. In the case sub judice, the notice provision in Section IV(2) makes no mention of the contract being void if late notice is received. A contract that is conditioned to become void on a specified event is one subject to a condition subsequent. Weems v. Am. Sec. Ins. Co., 450 So.2d 431, 435 (Miss.1984). Although coverage is granted in Section I, this coverage can be defeated by a later lack of notice as in Section IV; thus, the notice provision is a condition subsequent. As the notice provision is a condition subsequent then Capital City must show prejudice in order to deny Ringgold's coverage. See Harris v. Am. Motorist Ins. Co., 240 Miss. 262, 126 So.2d 870 (1961). We find that the notice provision was not a condition precedent; therefore, this issue is without merit. We proceed now to determine whether the chancellor erred in finding that Capital City was not prejudiced by Ringgold's delay of notice.

II. DID THE CHANCELLOR ERR IN FINDING THAT CAPITAL CITY HAD NOT SUFFERED PREJUDICE FROM RINGGOLD'S DELAY IN PROVIDING NOTICE OF THE INCIDENT?
¶ 7. In its second issue, Capital City argues that the chancellor erred in finding that Capital City had suffered no prejudice as a result of Ringgold's delay in providing notice of the incident. Capital City further contends that there was substantial evidence that the delay increased the cost of defense, increased the amount of damages recoverable by Boutwell, and decreased its ability to adequately defend the claims. Prejudice is a question of fact to be determined by the chancellor; therefore, we will only reverse a chancellor's decision if it is manifestly wrong. Harris, 240 Miss. at 274-75, 126 So.2d at 875-76.
¶ 8. The chancellor noted that Capital City had an affirmative duty to show substantial prejudice. Furthermore, the chancellor also noted that, pursuant to Rampy v. State Farm Mutual Auto. Ins. Co., 278 So.2d 428, 434 (Miss.1973), Capital City must show that the outcome in the liability action "would have been radically altered" had the insured complied with the notice provision. The chancellor noted the following in determining that Capital City failed to show substantial prejudice. The chancellor said that although Capital City *683 states it would have investigated Ringgold's claims, Capital City denied Ringgold's claim in less than three days. Capital City contends that it was impossible for it to obtain a stump count in order to determine the amount of timber removed from Boutwell's property due to the passing of time. However, Capital City's forester indicated that a stump count could have been performed, just at a higher cost.
¶ 9. Capital City also argues that it was prejudiced in the legal proceedings by Ringgold's failure to timely answer admissions. The chancellor found that Capital City participated in discovery, attended depositions, and participated in settlement negotiations. In the admissions, Ringgold was asked inter alia to admit that Ringgold cut timber off property without the consent of the owner. As Ringgold failed to answer the admissions, the requests were deemed admitted by the chancellor. The chancellor later allowed Ringgold to answer the admissions in order to remove any prejudice to Capital City by the prior acceptance of the admissions. The chancellor subsequently found that Capital City offered no testimony to contradict any of the facts which timely notice would have enabled them to develop.
¶ 10. In reviewing the record, we cannot find that the chancellor was manifestly wrong in finding that Capital City did not suffer substantial prejudice from Ringgold's delay in providing notice of the incident. Capital City should have provided coverage to Ringgold; thus, we find this issue is without merit.

III. DID THE CHANCELLOR ERR IN FINDING CAPITAL CITY JOINTLY AND SEVERALLY LIABLE WHERE NO PARTY HAD ALLEGED CAPITAL CITY COMMITTED A TORT?
¶ 11. In its last issue, Capital City claims that the chancellor erred in finding it jointly and severally liable as no party had alleged a tort committed by it. As stated previously, Boutwell joined Capital City as a defendant pursuant to Mississippi Rules of Civil Procedure 57(b) for the limited purpose of obtaining a declaratory judgment on the issue of coverage. Although Mississippi law bars any type of direct action by an injured party against an insurer, Rule 57(b) was amended in 2000 to modify the traditional rule "in the interest of judicial economy by allowing a direct action for the limited purpose of a declaratory judgment." Rule 57(b)(2) states that "[w]here an insurer has denied or indicated that it may deny that a contract covers a party's claim against an insured, that party may seek a declaratory judgment construing the contract to cover the claim."
¶ 12. We find that the chancellor abused his discretion in finding Capital City jointly and severally liable for the damages to Boutwell. The chancellor was limited in determining whether there was coverage between Capital City and Ringgold. At no time did Boutwell allege that Capital City played a role in the overcut of timber by Ringgold. The only claim against Capital City was contractual in nature and the chancellor properly found that coverage did exist. However, the chancellor erred in holding Capital City jointly and severally liable for these damages. The chancellor had no authority at that time to find Capital City liable for the full amount of damages. At most, Capital City, pursuant to its contractual obligation to Ringgold, may have been liable for up to the policy limit of $25,000, after which Ringgold could, if warranted, pursue a bad faith claim or subrogation against Capital City for the amount of damages it incurred over the policy limit.
¶ 13. In conclusion, we find that, although the chancellor was correct in finding *684 that coverage did exist, the chancellor abused his discretion in holding Capital City jointly and severally liable for the damages to Boutwell. Therefore, we affirm as to the determination that coverage existed between Ringgold and Capital City and that Capital City suffered no prejudice from the late notice, but we reverse and render as to the finding of joint and severally liability in regards to Capital City.
¶ 14. THE JUDGMENT OF THE SCOTT COUNTY CHANCERY COURT IS AFFIRMED IN PART AND REVERSED AND RENDERED IN PART. COSTS OF THIS APPEAL SHALL BE ASSESSED EQUALLY TO THE APPELLANT AND THE APPELLEE.
KING, C.J., BRIDGES, P.J., IRVING AND MYERS, JJ., CONCUR. GRIFFIS, J., CONCURS IN PART AND DISSENTS IN PART WITH A SEPARATE WRITTEN OPINION JOINED BY CHANDLER AND BARNES, JJ. ISHEE, J., NOT PARTICIPATING.
GRIFFIS, J., Concurring in Part and Dissenting in Part:
¶ 15. I respectfully disagree with and dissent from the majority's finding, in Issues I and II, that Capital City was obligated to Ringgold under the terms of the insurance policy. I agree with and concur in the majority's decision, in Issue III, to reverse and render the chancellor's finding that Capital City was jointly and severally liable to the original plaintiffs, the Boutwells. I consider these arguments in an order similar to the majority, but combine Issues I and II.
I. Did the chancellor err in finding that the notice requirement in Capital City's insurance policy with Ringgold was not a condition precedent to coverage?
II. Did the chancellor err in finding that Capital City had not suffered prejudice from Ringgold's delay in providing notice of the incident?
¶ 16. The majority analyzes this case based on a distinction of whether the notice provision was a condition precedent or a condition subsequent.[1] Determining that the notice provision was a condition subsequent, the majority considers whether Capital City was prejudiced by Ringgold's delay. The majority finds no prejudice and, thus, determines that coverage should have been provided to Ringgold. I respectfully disagree.
¶ 17. Section IV of the insurance policy controls our analysis. It reads:

SECTION IV COMMERCIAL GENERAL LIABILITY CONDITIONS
2. Duties in the Event of Occurrence, Offense, Claim or Suit.
a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:
(1) How, when and where the "occurrence" or offense took place;

*685 (2) The names and addresses of any injured persons and witnesses; and
(3) The nature and location of any injury or damage arising out of the "occurrence" or offense.
b. If a claim is made or "suit" is brought against any insured, you must:
(1) Immediately record the specifics of the claim and "suit" and the date received; and
(2) Notify us as soon as practicable.
You must see to it that we receive written notice of the claim or "suit" as soon as practicable.
c. You and any other involved insured must:
(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";
(2) Authorize us to obtain records and other information;
(3) Cooperate with us in the investigation, settlement or defense of the claim or "suit"; and
(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.
d. No insured will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.
3. Legal Action Against Us.
No person or organization has a right under this Coverage Part:
a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or
b. To sue us on this Coverage Part unless all of its terms have been fully complied with.
¶ 18. The majority relies on Commercial Union Ins. Co. v. Dairyland Ins. Co., 584 So.2d 405 (Miss.1991). In Commercial Union, the notice provision read:
You must cooperate with us in our effort to investigate the accident or loss, settle any claims against you and defend you. You must also send us, promptly, any legal papers served on you or your representative as a result of a car accident. If you fail to cooperate or fail to promptly send us such legal papers, we may have the right to refuse you any further protection for the accident or loss.
Id. at 407. Our supreme court determined that "the clause merely states that Dairyland `may have the right to refuse [the insured] any further protection.' The language implies that Dairyland also may not have the right to refuse protection." Id. at 408. The court ruled that the conflict between the use of the terms "must" and "may" created an ambiguous condition which should be interpreted in favor of the insured. Id.
¶ 19. Unlike Commercial Union, the notice provision here is not ambiguous. The policy clearly included several conditions that require Ringgold's performance before coverage will be provided. First, Ringgold had no right to proceed against Capital City "unless all of [the policy's] terms have been fully complied with." Policy, Section IV(3). Second, Ringgold had a absolute duty to promptly notify Capital City of any "`occurrence' or an offense which may result in a claim." Section IV(2)(a). Third, Ringgold had an absolute obligation to promptly report any litigation or potential claims and provide Capital City with a notice of the claim or complaint. Section IV(2)(b) and (c). *686 Fourth, Ringgold had an absolute duty to assist Capital City in the investigation, settlement or defense of any claim or lawsuit. Section IV(2)(c). Fifth, Ringgold had a duty to not offer payment, "assume any obligation, or incur any expense" without Capital City's consent. Section IV(2)(d).
¶ 20. Here, the notice provision never mentions the word "may;" instead, the policy uses the term "must," which requires performance. The notice provision included duties and obligations that were clear and absolute. There was no ambiguity. The notice provision of the insurance policy was a condition precedent to coverage.
¶ 21. In Bolivar County Board of Supervisors v. Forum Ins. Co., 779 F.2d 1081, 1084 (5th Cir.1986), the Fifth Circuit held:
[a] notice clause confers a valuable right upon [an insurer], the purpose of which [is] to enable it to investigate a claim against the [insured] [which may be] covered by the policy; to itself decide whether the claim should be settled without litigation, and, if not, to prepare its defense thereto.
(quoting Aetna Life Ins. Co. v. Walley, 174 Miss. 365, 164 So. 16, 19 (1935)). More recently, the Mississippi Supreme Court in Jackson v. State Farm Mutual Automobile Insurance Co., 2001-CT-01683-SCT (¶ 22) (Miss. Aug. 19, 2004), held that "notice confers valuable rights upon the insurer. Timely notice protects the insurer's right to investigate the events underlying the claim and allows the insurer to make decisions regarding the defense of that claim."
¶ 22. Mr. Boutwell, one of the plaintiffs, testified that he would have settled this case at the outset, in May of 1996, for the fair market value of the trees that were cut, approximately $5,000.
¶ 23. John Ecton, Capital City's adjuster, testified about what he would have done if he had received notice from Ringgold in May of 1996 or when the initial complaint was filed later in 1996. He testified that he would have hired a forester to conduct an appraisal of the timber damage, interviewed the insured (Ringgold), and then determined the circumstances surrounding the removal of timber. Ecton also testified that had he been able to complete these tasks at the beginning, in May of 1996, he would have settled the case in the range Mr. Boutwell said he would have accepted.
¶ 24. This was not a difficult case. The damages recoverable were based on a strict liability statute, Mississippi Code Annotated Section 95-5-10 (Rev.1994), which provides for an award of attorney's fees and costs where the suit is defended and litigation results.
¶ 25. By the time Capital City was notified of the claim, almost three years had passed, two separate complaints had been filed, discovery (including requests for admissions) had been propounded and ignored by Ringgold, and the plaintiffs had moved the court for summary judgment. The plaintiffs' attempts to settle at the beginning of the matter were refused by Ringgold.
¶ 26. More importantly, Ringgold's president was asked why he decided not to notify Capital City. He explained, "[b]ecause I believed that I was in the right; and I figured that they [Capital City] would just settle the lawsuit without arguing it." He continued, "I didn't think my insurance company would  should pay for something thatI  that I wasn't at fault; and I thought that they would probably just settle it without me being proven innocent." Ringgold's decision not to notify Capital City actually forced the plaintiffs to file suit and prosecute their claims. *687 Ringgold's actions were intentional, willful and deliberate. Ringgold's actions not only substantially prejudiced Capital City, but such actions were a material breach of the insurance contract.
¶ 27. For these reasons, I am of the opinion that the chancellor was manifestly wrong. I respectfully dissent as to Issues I. and II.

3. Did the chancellor err in finding Capital City jointly and severally liable where no party had alleged Capital City committed a tort?
¶ 28. I concur with the majority's finding on Issue III. Indeed, the chancellor had no legal basis upon which to find Capital City directly liable to the plaintiffs. Capital City's presence in the case was limited to a determination of the rights, duties and obligations of Capital City and its insured, under the terms of the insurance policy.
¶ 29. I write separately to address what I believe to be a frivolous argument. To support its position, Ringgold argued:
Contrary to Capital City's contention that holding all of the defendants jointly and severally liable is a legal impossibility, the decision of the Chancellor was not only possible, but also clearly correct under Hartford Accident & Indem. Co. v. Foster, 528 So.2d 255 (Miss.1988). Since 1988 it has been recognized that when a cause of action in excess of policy limits is covered by a policy of insurance, and an offer of settlement is made within the policy limits, the insurer has a fiduciary duty to look after the insured's interest at least to the same extent as its own, and also to make a fair evaluation of the claim. Hartford Accident & Indem. Co. v. Foster, 528 So.2d 255, 265 (Miss.1988).
¶ 30. Ringgold cited no authority that would hold the insurance carrier jointly and severally liable for an underlying tort committed by its insured, Ringgold. It is certainly creative and interesting that Ringgold would cite Hartford. Nevertheless, in light of Ringgold's failure to give Capital City timely notice of the claim, it is indeed ironic that Ringgold would argue that Capital City is liable to another based on a breach of its fiduciary duty.
¶ 31. I am of the opinion that this argument is wholly without merit and frivolous.
CHANDLER AND BARNES, JJ., JOIN THIS SEPARATE OPINION.
NOTES
[1] Recognizing that the concept of a "condition precedent" as opposed to a "condition subsequent" is complicated, confusing and uncertain, the American Law Institute has revised and combined these designations. Restatement (Second) of Contracts § 224 reporter's note (1981). Section 224 of the Restatement (Second) of Contracts now provides that, "[a] condition is an event, not certain to occur, which must occur, unless it's non-occurrence is excused, before performance under a contract becomes due." The Restatement (Second) of Contracts has discontinued the use of "conditions precedent" and "conditions subsequent." Mississippi should adopt the Restatement (Second) of Contracts § 224 (1981) and no longer recognize these distinctions.