JAMES, J.,
dissenting:
¶44. I respectfully dissent from the majority’s opinion and would reverse the circuit court’s grant of summary judgment in favor of Yates Engineering, ARMC, and Foil Wyatt. Although the majority did not reach the issue, I would also reverse the circuit court’s grant of summary judgment *1049 against Medina. As for the issues raised on cross-appeal that the majority did not reach, I would affirm the circuit court’s denial of ARMC’s motion to dismiss based on the statute of limitations, and I would affirm the circuit court’s denial of Yates Engineering’s motion to dismiss Robertson’s claim based on judicial estoppel.
I. Yates Engineering
¶ 45. Genuine issues of material fact exist, which precludes the grant of summary judgment. During construction of the towers, Yates Construction, the general contractor, verbally requested its sister company, Yates Engineering, to draw plans and specifications for the scaffolding used to support the second-floor concrete slab during construction. However, consistent with the prior practices between these separate entities, no written contract was entered into by the parties governing the scope of Yates Engineering’s duties. Likewise, no contract existed between Yates Engineering and ARMC. Therefore, the issue before the circuit court was whether Yates Engineering assumed a duty to inspect or supervise the construction of the scaffolding by its conduct.
¶ 46. “Engineers and architects are held to a duty to ‘exercise ordinary professional skill and diligence,’ duties usually controlled by the contracts between the parties.” Family Dollar Stores of Miss., Inc. v. Montgomery, 946 So.2d 426, 430 (¶ 12) (Miss.Ct.App.2006) (quoting Hobson v. Waggoner Eng’g Inc., 878 So.2d 68, 77 (¶ 35) (Miss.Ct.App.2003)). “Unless the architect has undertaken by conduct or contract to supervise a construction project, he is under no duty to notify or warn workers or employees of the contractor or subcontractor of hazardous conditions on the construction site.” Jones v. James Reeves Contractors Inc., 701 So.2d 774, 786 (Miss.1997). Yates Engineering contends that its only duty was to draw the plans and specifications of the scaffolding. However, the parties had no written contract that precisely limited Yates Engineering’s duty in that manner. Without the benefit of a contract, it is necessary to examine the conduct of Yates Engineering in order to determine whether it owed a duty to the Plaintiffs. Yates Engineering drew the very plans for the scaffolding that collapsed, and it was their duty, without a contract specifying otherwise, to ensure that the design was being followed and that the scaffolding was reasonably safe.
¶ 47. Perry, the Yates Construction superintendent, requested Ted Pope, a Yates Engineering engineer, to draw plans and specifications for the construction of the scaffolding. In response, Pope visited the site where Yates Construction had already begun constructing the scaffolding. Pope observed the scaffolding, and testified that “there were some wall shores up and, I think, some columns were being formed. But other than that I can’t recall.” Deposition testimony reveals that Pope examined the partially constructed scaffolding, and discussed his proposed plan and ideas for the completion of the scaffolding with Mike Clark of Yates Construction, who was responsible for constructing the scaffolding. Specifically, Pope testified:
Q: ... Did you know at some point prior to you sending out your drawings that Yates [Construction] employees were erecting shoring [/scaffolding] prior to receiving your drawings?
A: Did I know that Yates [Construction] was doing shoring[/scaffolding] before receiving my drawings?
Q: Right.
A: I didn’t know for a fact that they were.
Q: What did you know?
*1050 A: I knew what I saw that day I came down here and talked to Mike.
Q: Did you know what they were planning on doing in the following days?
A: No.
Q: Did you ever learn that they had erected shoring[/scaffolding] prior to receiving your drawings?
A: No, I did not know.
Q: Did it matter to you whether they erected shoring prior to receiving your drawings?
A: Did it matter?
Q: To you.
A: Yeah. Yes.
Q: Okay. What was your opinion on whether they should erect shor-ingl/scaffolding] prior to receiving your drawings?
A: I just don’t see how you can erect it without plans.
¶48. According to Pope, he did not know whether Yates Construction had continued to build the scaffolding prior to receiving his drawings that Perry had requested. Indeed, Pope confirmed that continuing building the scaffolding was essential, as he testified: “I just don’t see how you can erect it without plans.” Pope testified that there were some details that Yates Construction needed to know that could only be gleaned from his plan drawings and not solely through his discussions on site.
¶ 49. There is a genuine issue of material fact of whether the construction of the scaffolding was actually finished before Pope’s final diagram was submitted. The Plaintiffs’ expert, Dr. Sinno, opined in his report that the construction was probably finished by the time the final plans were submitted. The majority states that it is unclear how much of the scaffolding had been built when Yates Construction received Pope’s drawings. I cannot say that there are no genuine issues of material fact when the evidence is not even clear on how much of the scaffolding had actually been constructed when Yates Construction received Pope’s design drawings.
¶ 50. It is undisputed that the as-built scaffolding by Yates Construction did not match Yates Engineering’s plans and specifications. The majority finds that there is no evidence that Pope’s design caused the Plaintiffs’ injuries because Yates Construction did not actually follow design drawings that it had commissioned from Pope. However, had Pope not submitted fundamentally flawed and impossible-to-follow design drawings, Yates Construction would not have been forced to ignore the deficient drawings and act on its own by constructing the scaffolding without the benefit of sufficient drawings. Accordingly, I would submit the issue of determining whether Yates Engineering caused the collapse to the fact-finder. See Knox v. Mahalitc, 105 So.3d 327, 329 (¶ 7) (Miss.Ct.App.2011).
¶ 51. A genuine issue of material fact exists relating to whether Pope’s initial site visit constituted an inspection in compliance with the Yates Safety Manual. A genuine issue of material fact also exists regarding whether Pope conducted additional inspections of the scaffolding. Perry, the Yates Construction superintendent, testified that he saw Pope, the Yates Engineering engineer, at the construction-site office, a block away from the area where the collapse occurred about a week before the collapse. Perry assumed that Pope performed an inspection of the scaffolding in accordance with the Yates Safety Manual, which requires the expected shoring to be inspected by an engineer qualified in structural design. However, Pope denies he ever went to the construction site or did not recall going there. The majoi'ity states that “when pressed further,” Perry *1051 conceded his original answer on a previously submitted OSHA form that stated he thought Pop had inspected the scaffolding. It is for the jury to decide whether to believe the representations made by Perry on the OSHA form that he thought Pope performed an inspection or that Yates Construction did not have an engineer to inspect the scaffolding.
¶ 52. I also would find that Pope undertook a duty to inspect the scaffolding even though Pope denied inspecting or did not recall inspecting the scaffolding before the collapse. See Doe ex rel. Doe v. Wright Sec. Servs., Inc., 950 So.2d 1076, 1080 (¶ 12) (Miss.Ct.App.2007) (“A duty also exists where a party contracts or otherwise assumes a duty.”). This undertaken duty is evidenced by the fact that Perry was under the impression, whether through the actions of Pope or their conversations, that Pope was at the construction site inspecting the scaffolding a week before the collapse. Moreover, Pope did not unequivocally testify that he did not perform an inspection of the scaffolding. Pope simply testified that he did not recall performing an inspection. In sum, Yates Engineering undertook a duty through its conduct to ensure that the scaffolding was safe.
¶ 53. “The moving party has the burden of demonstrating that no genuine issue of material facts exists, and the non-moving party must be given the benefit of the doubt concerning the existence of a material fact.” Duckworth v. Warren, 10 So.3d 433, 437 (¶ 9) (Miss.2009). Yates Engineering has failed to meet its burden. Because there are genuine issues of material fact that needed to be decided by the jury, I would find that summary judgment was improperly granted in favor of Yates Engineering.
II. ARMC
¶54. The circuit court initially denied ARMC’s motion for summary judgment in a well-reasoned opinion and order. According to the circuit court on its initial review of ARMC’s motion for summary judgment, the key issue was whether an agency relationship had been established between ARMC and Yates Construction. Initially, the circuit court found that there was a genuine factual issue for the jury as to whether the acts and conduct of ARMC and Yates Construction was sufficient to create an agency relationship whereby ARMC could be held liable if it was proven that a safe working environment was not provided. Alternatively, the circuit court found that ARMC was not entitled to immunity as it is not the type of contractor or statutory employer contemplated under the Workers’ Compensation Act and has not assumed responsibility under the Act.
¶ 55. When ARMC was the only defendant remaining in the case, the circuit court entered an order simply stating that it had reconsidered ARMC’s motion for summary judgment and found it was well-taken. The order provided that the circuit court found no genuine issue of material fact remained with respect to the Plaintiffs’ claims against ARMC, and it was entitled to a judgment as a matter of law. I disagree.
¶56. Mississippi Code Annotated section 11-1-66 (Rev.2014), provides: “No owner, occupant, lessee or managing agent of property shall be liable for the death or injury of an independent contractor or the independent contractor’s employees resulting from dangers of which the contractor knew or reasonably should have known.” “Likewise, Mississippi common law protects business owners from injuries sustained by independent contractors on the work site.” McSwain v. Sys. Entergy Resources, Inc. 97 So.3d 102, 108 (¶ 19) (Miss.Ct.App.2012). The exception to the rule is that “an employer is under a duty to pro *1052 vide an independent contractor with a reasonably safe working environment or give warning of danger.” Id.
¶ 57. “While the general rule is that the owner of the premises does not have a duty to protect an independent contractor against risks arising from or intimately connected with the work, there is an exception where the owner maintains substantial de jure or de facto control over the work to be performed.” Coho Resources Inc. v. McCarthy, 829 So.2d 1, 13 (¶ 30) (Miss.2002). “While the owner of a premises, under Mississippi law, generally has a duty to use reasonable care to keep its premises in a reasonably safe condition for business invitees, the owner is not an insurer of the invitee’s safety.” Id. at 10 (¶20). “What is critical is whether the project owner maintains any right of control over the performance of that aspect of the work that has given rise to the injury.” Magee v. Transcon. Gas Pipe Line Corp., 551 So.2d 182, 186 (Miss.1989). “In this setting the undisputed language of the contract becomes important.” Id. With no formal written contract between ARMC and Yates Construction, the conduct of the parties must be examined.
¶58. ARMC possessed the ultimate right and ability to control all work on its premises, including stoppages of any aspect of the construction for safety reasons or otherwise. The majority confirms that only ARMC had the authority to stop work on this project. The only limitations on ARMC was that its ability to inspect the nature, quality, and safety of the work was an “unwritten requirement” or “understanding” that ARMC would obtain permission before entering the work zone for safety reasons. Farr, the vice president of operations at ARMC, gave the following deposition testimony:
Q: If at any point during the work on this project, if the hospital had wanted to cease construction efforts, could it have done so?
A: Sure.
Q: Whether it be for financial or any other reason. There’s nothing that you’re aware of on behalf of the hospital that would have prevented them from ceasing further construction efforts on this project?
A: Not that I know of.
[[Image here]]
Q: If at any point in time the hospital was unsatisfied with the work that had been done, could the hospital have ordered the work to have been redone? In other words, to do it over again?
A: Yeah. If, for some reason—if, for some reason, it wasn’t meeting our expectations.
¶ 59. I would not find that complying with this “unwritten requirement” or “understanding” to perhaps put on a hard hat equates to a complete surrender of the premises to Yates Construction. Moreover, Yates Construction occupied actual office space in ARMC during the construction project. ARMC’s right to control the progress of the construction work on its premises is also evidenced by the fact that there was documentation setting a timeline for completion of the project. ARMC argues that it is not in the construction business; however, Farr testified that the VPs have various duties, including clinical and nonclinical duties. Additionally, an ARMC representative was present and participated at the monthly construction progress meetings. Yates Construction would regularly call or contact Farr outside of the regularly scheduled progress meetings because Yates Construction had certain matters to address regarding the construction project, for which they needed Farr’s input.
*1053 ¶60. An agency relationship may be shown by circumstantial evidence. Powell v. Masonite Corp., 214 So.2d 469, 470 (Miss.1968) (citing Hobbs v. Int’l Paper Co., 203 So.2d 488 (Miss.1967)). The long continued employment of a person or entity that may be terminable at will is a strong indicator that the entity is not an independent contractor, but has assumed the status of an employee. Id. Regardless of the classification of Yates Construction and whether it assumed the status of an employee, both an independent contractor and a servant may be agents of their principal. See Richardson v. APAC-Miss., 631 So.2d 143, 147-48 (Miss.1994).
¶ 61. I would also find that a genuine issue of material fact exists in determining whether an agency relationship existed between ARMC and Yates Construction. Consistent with the normal course of business for a significant amount of time, no contract existed between ARMC and Yates Construction pertaining to this construction project. Farr testified that Yates Construction has maintained a physical presence on ARMC’s campus for more than twenty years.
¶ 62. Alternatively, ARMC argues that it should enjoy the protections of a “statutory employer” under the Mississippi Workers’ Compensation Act. I disagree. ARMC is not the type of contractor or statutory employer as contemplated by the Mississippi Workers’ Compensation Act. See Richmond v. Benchmark Const. Corp., 692 So.2d 60, 63 (Miss.1997) (finding where defendant property owners had no responsibility under the Workers’. Compensation Act, they enjoy none of the benefits of the Act).
III. Foil Wyatt
¶ 63. The circuit court stated in its opinion granting summary judgment in favor of Foil Wyatt that an architect may be held liable for workplace injuries only if it assumes by contract or conduct the responsibilities of the supervision of construction and maintenance of safe conditions on the construction project. See Jones, 701 So.2d at 785-86. I cannot be certain that Foil Wyatt did not exhibit any conduct that would make it appear that it had assumed any duties because this case is factually sensitive. Adso, the record is not clear as to whether the dismissal of the opinion of the expert, Dr. Sinno, was relevant in determining whether Foil Wyatt assumed responsibility by its conduct. I agree that Foil Wyatt is protected by its contract, but I am not willing to assume the role of the jury and dissolve the issue of whether Foil Wyatt exhibited any conduct that made it appear that it had assumed responsibility. This case is factually sensitive, and these facts should be decided by a jury.
¶ 64. In Jones, the court stated:
We philosophically disagree with the holdings of Hanna [v. Huer, Johns Neel, Rivers, & Webb, 233 Kan. 206, 662 P.2d 243 (1983) ] and Walker [v. Wittenberg, Delony & Davidson, 241 Ark. 525, 412 S.W.2d 621 (1966)] to the extent that they hold that a contractual duty to maintain actual supervision over the details of the construction project does not entail the duty to supervise safety. It would seem natural that the supervision of safety is encompassed in the duty to supervise, and no separate agreement to supervise safety is necessary where the architect is supervising the details of every other aspect of the project.
Id. at 785. In Hobson, 878 So.2d 68, 73 (¶ 18) (Miss.Ct.App.2003), this Court interpreted this language in Jones “to mean that if the engineer has contracted to supervise every other aspect of the project besides safety, then liability, with regard to safety, may then be extended to the *1054 engineer in some circumstances, regardless of contractual obligations[.]” The court also adopted the aforementioned Hanna factors identified in the majority-opinion.
¶ 65. I would find Foil Wyatt’s conduct was sufficient to establish a duty, thereby precluding summary judgment. Foil Wyatt was a regular visitor to the construction site and a participant in the on-site project meetings between the contractor, various subcontractors, and the owner. Skip Wyatt testified that he was on the job site once a week, and after the monthly progress meetings, he would walk around the construction site in order to note how much work had been completed so that he could certify payments to Yates Construction. Foil Wyatt provided specifications for the formwork and rebar. Moreover, Foil Wyatt was at liberty to reject work that did not conform to the contract documents. For example, Foil Wyatt could request that a concrete slab be redone if it was uneven or did not conform with specifications.
¶ 66. I agree with the Plaintiffs’ argument that any inspections of the formwork conducted by Foil Wyatt to ensure that the concrete would be true when poured would necessarily included an observation and inspection of the underlying supporting scaffolding. Testimony reveals that the subject scaffolding was inadequate to the most casual observer. Telly Wals-worth, the owner of Spectrum II who employed the Plaintiffs, gave the following testimony:
Q: All right. Did it appear that the shoring|7scaffolding] had been constructed safe and did it look stable to you?
A: It looked kind of homemade. I’ve never seen nothing like it before.
Q: Okay. Did you tell anybody at Yates Construction about it?
A: Yes. I told Mr. Clark, who was the superintendent. I told him that it didn’t look safe and I didn’t feel like it would work. He said, “Well, we’ve been doing this 30-something years. Get up there. It’s going to be fine.”
¶ 67. Clearly, Walsworth was concerned about the appearance of the scaffolding, which would support the eventual concrete pour. Wyatt and Perry, of Yates Construction, inspected the formwork to ensure that wet concrete would not leak out of it. Wyatt could not recall if the scaffolding was finished at the time of the inspection, but he confirmed he did not inspect it. If the scaffolding was completed at the time of the inspection of the formwork, Wyatt should have been alerted to the scaffolding, which Walsworth described as “homemade.” Nonetheless, Wyatt inspected the rebar approximately a week before the collapse. Had the scaffolding not been completed at the time of the inspection, Wyatt should have noticed the “homemade” appearing scaffolding during one of his walks through the construction site.
¶ 68. It would seem natural that the design and inspection of the formwork extended to the scaffolding that supported the formwork. Certainly, it was not part of the plans and specifications for the form-work to collapse and have to be rebuilt. I cannot say that the duty to inspect the formwork and ensure compliance with the formwork plans and specifications did not also impose a duty to inspect the scaffolding, which supported the formwork. Foil Wyatt was contractually obligated to visit the site to become generally familiar with the progress and quality of the work and endeavor to guard ARMC against defects and deficiencies in the construction. I would find that Foil Wyatt assumed a duty by its conduct to provide a safe working *1055 environment. A genuine issue of material fact exists in determining whether that duty was breached. Accordingly, I would reverse the summary judgment that was entered in favor of Foil Wyatt.
IY. Whether the circuit court erred by dismissing Medina’s claim based on his alleged illegal-alien status in favor of Yates Engineering and ARMC.
¶ 69. One of the Plaintiffs, Medina, invoked the Fifth Amendment and repeatedly declined to verify his citizenship and work status during his deposition testimony. The circuit court surmised that he was an illegal alien and concluded that but for his illegal employment, Medina would not have been injured during the construction accident during the course of his employment. The circuit court dismissed Medina’s case, without prejudice to his recovery of statutory workers’ compensation benefits, under the wrongful-conduct rule, which provides that “no court will lend its aid to a party who founds his cause of action upon an immoral or illegal act.” Price v. Purdue Pharma Co., 920 So.2d 479, 484 (¶ 13) (Miss.2006).
¶ 70. The circuit court reached its decision relying on Price. However, in Price, the court also stated: “At the same time, if the plaintiff is a lawbreaker at the time of his injury, that alone is not enough to bar the plaintiff from recovery.” Id. at 485 (¶ 14). “The injury must be traceable to his own breach of the law and such breach must be an integral and essential part of the case.” Id. In Price, the plaintiff was refused compensation for his personal-injury claim against pharmaceutical entities due to his abuse of OxyContin, which caused him the very harm for which he was seeking compensation. Id.
¶ 71. Medina contends that there has been no finding of a causal connection between Medina’s alleged illegal-immigrant status and his injuries. I agree. Medina’s alleged illegal-immigrant status alone is not enough to bar him from recovery. Although the circuit court found cause in fact, unlike the plaintiff in Price, Medina’s alleged illegal conduct was not an integral and essential part of his case such as to prevent his recovery under the wrongful-conduct rule.
¶ 72. The circuit court also noted that allowing Medina to recover for injuries sustained during the course of his own illegal conduct would be contrary to public policy. However, undocumented-immigrant plaintiffs have been allowed to seek recovery for personal injuries suffered in the workers’ compensation context, specifically under the Longshore and Harbor Workers Compensation Act. See Bollinger Shipyards Inc. v. Director, Office of Worker’s Compensation Programs, 604 F.3d 864, 873 (5th Cir.2010) (holding that undocumented immigrants are eligible to recover workers’ compensation benefits under the LHWCA). Similarly, Medina’s alleged illegal-immigrant status, standing alone, does not prevent him from pursuing a personal-injury claim. See Moreau v. Oppenheim, 663 F.2d 1300, 1307-08 (5th Cir.1981) (“Even assuming that violations of the immigration laws by the [plaintiffs] occurred, the remedy for these violations is ... criminal sanctions, not denial of access to court.”).
Y. Whether the circuit court erred by denying Yates Engineering’s motion to dismiss Robertson.
¶73. Yates Engineering cross-appeals claiming that the circuit court erred by denying its motion for summary judgment against one of the Plaintiffs, Robertson, under the theory of judicial estoppel for failing to disclose his personal-injury cause of action. I disagree.
*1056 ¶ 74. On December 23, 2007, before the collapse, Robertson and his wife, LaDonna Robertson, filed for Chapter 13 bankruptcy. The bankruptcy court confirmed the plan on March 25, 2008, and Robertson and his wife began making payments under the plan. The collapse occurred on November 17, 2008. Following the collapse, Robertson and his wife defaulted on their payments, and the bankruptcy trustee filed an action to dismiss or remedy the default on March 12, 2009. On June 6, 2010, Robertson’s bankruptcy case was dismissed for a default in payments. No discharge or other relief was granted to the Robertsons. On September 1, 2010, Robertson filed his complaint in this personal-injury case.
¶ 75. Robertson’s personal-injury claim arose after he filed his bankruptcy petition and after his Chapter 13 plan was approved by the bankruptcy court. Similarly, in Copiah County v. Oliver, 51 So.3d 205, 207 (¶ 8) (Miss.2011), Oliver’s personal-injury cause of action arose after she had filed her bankruptcy petition and after her Chapter 13 repayment plan was approved by the bankruptcy court. Id. The circuit court in Oliver issued a stay and referred the matter to the bankruptcy court for an assessment of the application of judicial estoppel. Id. at (¶ 11). When the matter was referred to the bankruptcy court, Oliver was making payments under an active bankruptcy plan. Id. at 206 (¶ 4). However, unlike Oliver, Robertson’s bankruptcy case had been dismissed for failure to make payments, and no discharge had been granted at the time Yates Engineering raised the issue of judicial estoppel.
¶76. The circuit court found that it could not refer the case back to Robertson’s non-existent bankruptcy proceeding as the circuit court did in Oliver. The circuit court correctly concluded that because Robertson’s bankruptcy case had been dismissed and no discharge had been granted, judicial estoppel is not applicable. Robert’s failure to disclose his personal injury case was of no consequence. Robertson received no benefit for his failure to disclose his personal-injury claim. Finding no error, I would affirm the circuit court’s denial of Yates Engineering’s motion to dismiss Robertson’s case based on judicial estoppel.
VI. Whether the circuit court erred by denying ARMC’s motion to dismiss based on the statute of limitations.
¶ 77. ARMC claims the circuit court erred by denying its Rule 12(b)(6) motion to dismiss because the Plaintiffs’ claims against it are barred by the three-year statute of limitations. I disagree. I would find that the Plaintiffs’ claims against ARMC were not barred by the statute of limitations.
¶ 78. The collapse occurred on November 17, 2008, and it is undisputed that the applicable statute of limitations is three years. On January 26, 2011, the court held a hearing on Yates Construction’s motion to stay the proceedings. On February 11, 2011, the circuit court entered an order staying the proceedings pending the resolution of the declaratory-judgment action in the United States District Court for the Southern District of Mississippi. The circuit court’s order provided that the statute of limitations was “hereby tolled from January 26, 2011[,] until this Court lifts the subject stay pursuant to Mississippi Code Annotated section 15-1-57 (Rev. 2012).” The circuit court ordered that “the parties shall obtain a hearing date before [the circuit court] where the Plaintiffs will be allowed to apply to the Court to lift the stay.” The circuit court also ordered that “[t]he tolling of the statute of limitations during this time shall continue *1057 until [the circuit court] lifts the stay and allows Plaintiff to prosecute their actions herein.” On September 6, 2011, the circuit court lifted the stay. Mississippi Code Annotated section 15-1-57 provides:
Where any person shall be prohibited by law, or restrained or enjoined by order, decree, or process of any court in this state from commencing or prosecuting any action or remedy, the time during which such person shall be so prohibited, enjoined or restrained, shall not be computed as any part of the period of time limited by this chapter from the commencement of such action.
¶79. Thus, the statute of limitations was tolled from January 26, 2011, until September 16, 2011, because the Plaintiffs’ ability to prosecute their claims was restrained. Under section 15-1-57, the 233 days that the proceedings were stayed cannot be computed as part of the running of the statute of limitations. Therefore, the Plaintiffs’ second amended complaint adding ARMC on June 8, 2012, was not time-barred. Moreover, ARMC was actively involved in this litigation as evidenced by its participation in the hearings contained in the record before it was added as a defendant. Finding no error, I would affirm the circuit court’s denial of ARMC’s motion to dismiss.
¶ 80. For the reasons stated in my dissent, I would reverse the summary judgment granted in favor of Yates Engineering, ARMC, and Foil Wyatt. I would also reverse the summary judgment granted against Medina. I would affirm the circuit court’s denial of the motion to dismiss against Robertson. I would also affirm the circuit court’s denial of ARMC’s motion to dismiss. Accordingly, I would remand this case for a trial on the merits.